UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61606-CIV-COHN/SELTZER

ROY FERGUSON,

     Plaintiff,

vs.

NORTH BROWARD HOSPITAL DISTRICT
n/k/a BROWARD HEALTH,

     Defendant.

_____/

<u>ORDER</u>

THIS CAUSE is before the Court on Defendant North Broward Hospital District n/k/a Broward Health's Second Motion for Protective Order and for Sanctions (DE 47) and Plaintiff's Emergency Motion to Compel Answers to Deposition Questions (DE 46).

Plaintiff brings this action under the Family and Medical Leave Act, 29 U.S.C. § 2611, <u>et seq</u>. Plaintiff was employed by the North Broward Hospital District n/k/a Broward Health as a transporter from November 2005 until his termination in May 2009. He alleges that he is a diabetic and, consequently, it was medically necessary for him to take intermittent meal breaks to regulate his blood sugar levels. Plaintiff further alleges that he requested and was approved for intermittent medical leave for his health condition. According to Plaintiff, Defendant terminated him for taking a meal break to stabilize his blood sugar, offering as grounds a violation company policy that all rest breaks be approved by the dispatcher, dependent on work load. Defendant contends that Plaintiff's employment was terminated because of his continued disregard of its attendance and

punctuality policy and his insubordinate and inappropriate behavior towards supervisors, co-workers, and patients.

On March 17, 2011, Plaintiff's counsel commenced the deposition of non-party Paul Ward, Plaintiff's former supervisor. After 50 minutes of testimony, Defendant's counsel (who also represents Ward) terminated the deposition, pursuant to Federal Rule of Civil Procedure Rule 30(d), because of alleged abusive questioning of the witness by Plaintiff's counsel; Defendant's counsel indicated at that time that she would be moving for a protective order. On March 30, Defendant moved for summary judgment; in support, she submitted, *inter alia*, the sworn declaration of Paul Ward, notwithstanding that Plaintiff had not been able to complete Ward's deposition. Thereafter, Plaintiff moved for sanctions against Defendant, requesting that the Court strike Defendant's summary judgment motion or, in the alternative,  strike Ward's declaration and all references related to or provided by Ward.  Twenty two days after terminating Ward's deposition, and only after Plaintiff had filed his sanctions motion, Defendant's counsel moved for a protective order, requesting that the Court prohibit any further questioning of Ward and that the Court impose monetary sanctions against Plaintiff's counsel for his alleged abusive deposition conduct.

On April 19, 2011, the Court denied Defendant's motion for protective order as untimely.  It also required Ward's deposition to continue, but precluded Plaintiff's counsel from inquiring as to Ward's immigration status, his reason for leaving the employment of the defendant company, and his applications for employment thereafter.[1]  The Court also

---

[1] Plaintiff represented that these questions were to test the credibility of the witness. According to Plaintiff, Defendant terminated Ward for misrepresenting his immigration status by falsely claiming he was a citizen and that he thereafter sought other employment knowing he was not a citizen; yet he testified that he could not remember whether he

denied Plaintiff's request to strike Defendant's summary judgment or alternative to strike Ward's sworn declaration given that it had permitted Plaintiff to resume and conclude Ward's deposition.

On April 25, 2011, the parties resumed Ward's deposition.  After questioning the witness about his declaration and his knowledge as to Plaintiff's medical condition, Plaintiff's counsel inquired as to Ward's marital status, his recent application for a marriage license, the length of time he and his fiancee had lived together (7-9 years), and their places of residence.  The witness answered these questions without reservation. When Plaintiff's counsel again inquired how long Ward and his fiancee had been living together Defendant's counsel objected to this line of questioning.  She stated "we are not going down this road again," and they would get the "judge on the line;" she also "beg[ged]" Plaintiff's counsel "not to make [her] terminate the deposition again," and inquired whether he wished to ask the witness anything that related to the lawsuit.  Ward Dep. at 8[2] (DE 52-1).  Plaintiff's counsel thereafter asked how long the witness had lived at a particular location.  After the witness answered (again without reservation), Defendant's counsel announced they were taking a break and left the deposition room with Ward.

When the deposition resumed, Plaintiff's counsel again asked Ward how long he had lived in that particular location, and Ward answered.   Plaintiff's counsel then asked

_____

represented to these potential employers whether he was a citizen.  Ward maintained both at his deposition and in his declaration that he "resigned" his employment.

   [2]  Because the deposition transcript submitted to the Court is an email copy, it is difficult to ascertain the page numbers.  Therefore all references to the page numbers of the transcript reflect the page numbers of Docket Entry 52-1 (Plaintiff's Notice of Filing Second Deposition of Paul Ward and attached deposition).

how many of those years had he lived with his fiancee.  Ward responded:  "I don't wish to answer those questions, sir."  Id. at 9.  Ward thereafter gave the same or similar response to questions as to whether the home where he is living is Section 8 housing and whether he had ever lived in Pensacola.  Plaintiff's counsel then inquired of both the witness and Defendant's counsel (since she was representing the witness) whether by Ward's responses that "he did not wish to answer" he was refusing to answer those questions. Defendant's counsel responded that "[t]he witness has given you his answer to those particular questions."  Ward Dep. at 10 (DE 52-1).  After an exchange between counsel as to the propriety of this line of questioning, Defendant's counsel stated:

> Now, again at the previous deposition you attempted to ask irrelevant questions to intimidate the witness and to try to make him not want to testify at trial, which is improper, and you are doing it again and it is again improper.  Your are trying to embarrass . . . harass and annoy this witness and you are not asking questions that have to do with the facts and circumstances of this case.  You are not asking questions that have anything do with proving your claims against Broward Health or applicable to any of our defenses.

Id. at 11.  Plaintiff's counsel responded:

> I have been restricted by the court on its own from asking as to three areas.  I have not covered those areas.  I am asking other questions.  Your are not asserting a privilege.  You are just assuming that you have the right to allow him, your client, not to answer these questions.  Since he is your client, he needs to assert a privilege, such as, if he wishes to take the Fifth, that would be a privilege.  I couldn't go down those lines. But just saying I don't wish to answer is not acceptable.  I have to keep asking this guy questions until he either takes the Fifth or you confirm that he is – Caran, just put it on the record that he is refusing to answer.  That is all I have asking you to do.

Id.  Defendant's counsel replied:  "No, that it not what he is saying."  Id.

Counsel for both parties then conferred off the record and agreed that the deposition

would resume with Plaintiff's counsel questioning Ward only as to the merits of this law suit.  With respect to questions going to the witness's credibility, counsel agreed that they would ask the Court to decide the issue by appropriate motion(s).  Plaintiff's counsel thereafter put on the record his position:

> [Defendant's counsel] and I have been discussing the issue of the witness's declination of answering questions that I've asked, and the fact that the witness will not assert a privilege and that even though [Defendant's counsel] represents him. She believes that he is not required to answer these questions on the basis of the court order . . . dated 4/19/11.  It is my opinion that I have been precluded by the court . . . to inquire into three specific areas. . . . Mr. Ward's marital status and his addresses over the years have not been precluded and we have tried to resolve this.  I have asked if someone would just state on the record that he is either asserting a privilege or no matter what I do he is refusing to answer.  He says, quote, I believe his words are, "I choose not to answer those questions."
>
> I have tried all I can [to] try to obtain a more specific statement as to whether or not it is an absolute refusal, whether or not it is something along those lines.  I believe in accordance with the rules that this evidence that I have asked is material to the issue of the [witness's] credibility.  I believe that the evidence will show that Mr. Ward has during the period of time that he was working as a supervisor at Broward General, Broward Health,  has been living with [his fiancee] in public housing in Section 8 housing.   I can't tell for sure because he won't answer the question as to whether or not he is the tenant in that house or if it is covered by Section 8.  If it is covered under Section 8, I believe it is material as a matter or impeachment. . . .
>
> And I have discussed this with counsel while we were out talking.  She believes that this has been precluded by the court and we have also tried to have the court hear us and resolve this, but were told to file a motion. . . . [M]y position at this point is that this is a refusal to answer questions no matter how he couches his answers and any inquiry I make along those lines, which I believe to be permissible and are not for the purpose of embarrassing you, but rather for the purpose of impeaching

his testimony. . . .

Id. at 11-13.

Defendant's (and the witness's) counsel followed with her position:

> [O]ur position is that this questioning, this line of questioning is contrary to the spirit, if not the letter of the order and is solely engaged in to unreasonably annoy, embarrass, oppress Mr. Ward, to intimidate him into not wanting to testify at trial and for various other improper purposes and reasons. The witness has given an answer on the record to assert other questions and we have implored [Plaintiff's counsel] to ask any questions and proceed asking questions relative to the merits of this lawsuit. And I, from what I understand if you are agreeing, we are going to leave this issue for the court to determine. We are going to move on then to the merits of the lawsuit.

Id. at 13.

Ward's deposition resumed with Plaintiff's counsel limiting his inquiry as to the claims and defenses asserted herein. At the conclusion of the deposition, when asked Ward stated that he was declining to answer Plaintiff's prior questions with respect to his housing situation.

The parties' instant motions ensued; the motions essentially reiterate the respective positions articulated by counsel at the deposition. Defendant now requests that the Court protect Ward from any further questioning, deem Ward's deposition concluded as of April 25, 2011, and impose sanctions on Plaintiff's counsel for abusive deposition conduct. By contrast, Plaintiff requests that the Court permit him to complete Ward's deposition and require Ward to answer the questions that he refused to answer at the continuation of his deposition.

After thoroughly reviewing the transcript of Ward's April 25, 2011 deposition transcript (DE 52), the Court finds that the manner in which Plaintiff's counsel questioned

Ward was not confrontational, argumentative, threatening, oppressive, or abusive in any way.  Rather, Defendant's counsel appears to object not to Plaintiff's counsel's manner of questioning, but rather the subject matter of the questions – Ward's marital status, former residences, living arrangements with his finance, and Section 8 housing status.[3]  She contends that these questions were "inappropriate accusations of wrongdoing and thinly veiled threats to attempt to make Mr. Ward fear or loathe testifying during the deposition and at trial."  Reply at 2 (DE 58).  Moreover, Defendant's counsel appears to be under the mistaken belief that the Court's prohibiting Plaintiff's counsel from inquiring further into Ward's "immigration status, his reason for leaving the employment of the defendant company or his application for employment thereafter," Order at 3 (DE 38), precluded questioning during the continuation deposition of any matters not directly related to the merits of this action, including credibility.   At the original deposition, Plaintiff's counsel questioned Ward about these matters for nearly the entirety of the 50 minute deposition.  The Court precluded any further inquiry as to this line of questioning because they Court believed that these areas had been sufficiently exhausted, not because they went to the witness's credibility.

As one commentary has noted:  "Discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition.  Inquiry is routinely allowed about . . . matters that go his credibility.  Information showing that a person having knowledge of discoverable facts may not be worthy of belief is always

---

[3]  "The Section 8 housing program was created in 1974 'for the purpose of aiding low-income families in obtaining a decent place to live and [for] promoting economically mixed housing.'"  Estevez v. Cosmopolitan Assocs., L.L.C., No. 05 CR 4318 (JG), 2005 U.S. Dist. LEXIS 29844, at 1-2 (E.D.N.Y. Nov. 28, 2005) (quoting 42 U.S.C. § 1437f(a)).

relevant to the subject matter of the action."  8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure, § 2015 (3d ed. 2010); see also Bolia v. Mercury Print Prod., Inc., No. 02-CV-6510T, 2004 WL 2526407, at *2 (W.D.N.Y. Oct. 28, 2004) ("Generally, parties may utilize discovery to obtain information for impeachment purposes, particularly for uncovering prior acts of deception.") (citations and internal quotation marks omitted); Cabana v. Forcier, 200 F.R.D. 9, 17 (D. Mass. 2001) ("Inquiries concerning a witness's credibility are relevant and thus reasonably calculated to lead to the discovery of admissible evidence, even if the information sought is not directly related to the subject of the underlying litigation.") (internal citation omitted).

But "[d]efining the scope of discovery related to impeachment is troublesome; the areas to be probed to test a witness' credibility are virtually limitless."  Davidson Pipe Co. v. Laventhol and Horwath, 120 F.R.D. 445, 462 (S.D.N.Y 1988).  Some courts, therefore, have limited discovery of impeachment evidence to that which may lead to admissible evidence.  Id.   Additionally, courts have considered the following five factors in analyzing whether the information sought may reveal information affecting a witness's credibility:

> (1) whether the prior act in question demonstrates a propensity for deception; (2) whether the prior act occurred in the context where there is a premium on veracity; (3) the lapse of time between the prior act and the events and transactions in the instant action; (4) the relationship between the subject matter of the prior deceptive act and the subject matter of the instant litigation; and (5) whether the party seeking disclosure has a foundation for the inquiry.

Terra Capital Assocs. v. Verizon Pennsylvania, Inc., No. 07-CV-705-JTC, 2010 WL 2509975, at *13 (W.D.N.Y. June 16, 2010) (citing Davidson,120 F.R.D. at 462-63).

In the instant case, the Court finds that whether Plaintiff should be permitted to

inquire as to Ward's living arrangements and Section 8 housing status is a close question. Plaintiff's counsel represents that his investigation has revealed that the address at which Ward currently shares a home with his finance is Section 8 housing" and that "Ward has apparently resided with [her] in other Section 8 housing during this period."  Motion at 2 (DE 46).  He argues that "Section 8 housing is restricted to the poorest of the poor.  The fact that Ward, who was a Broward Health supervisor and working at Home Depot until July 10 may be residing in Section 8 housing is relevant to his credibility."  Id.

The Court concludes that this line of questioning may lead to the discovery of admissible evidence.  For example, a misrepresentation of income on a Section 8 housing application would bear on the witnesses veracity.  Moreover, it appears that Plaintiff's counsel has conducted some investigation that provides him with a good faith basis for his questioning on these matters.

Based on the foregoing, it is hereby ORDERED as follows:

1.	Defendant North Broward Hospital District n/k/a Broward Health's Second Motion for Protective Order and for Sanctions (DE 47) is DENIED.  Plaintiff may reconvene Paul Ward's deposition and question him as to matters relating to his living arrangements and Section 8 housing status.  Plaintiff's counsel, however, has represented that he has concluded his examination as to matters relating to the merits of this lawsuit.  Plaintiff's inquiry, therefore, shall last no more than 45 minutes.  Ward's deposition must be completed on or before May 27, 2011.

2.	Plaintiff's Emergency Motion to Compel Answers to Deposition Questions (DE 46) is GRANTED.  Paul Ward shall answers all questions, including those that he "did not wish to answer" at his April 25, 2011 deposition, unless he in good faith asserts a

privilege to the question.

      DONE AND ORDERED in Fort Lauderdale, Florida, this 17th day of May 2011.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record